## In re SCHROEDER.

(District Court, E. D. New York.   April 20, 1920.)

1. **Bankruptcy** ⊕⟶414(3)—**Evidence held to show transfer to wife because of pendency of action.**

On objections to a bankrupt's application for discharge, evidence *held* to show that a transfer of his business to his wife was not, as claimed, in anticipation of his being drafted, but because of the pendency of an action against him, which he feared would result in a judgment, and that no real transfer was intended.

2. **Bankruptcy** ⊕⟶408(4)—**Failure to schedule interest in business transferred to wife justifies denial of discharge.**

Where a bankrupt's transfer of a business to his wife was not intended as a real transfer, he could have recovered it from her, and should have set forth his interest therein in his schedules, and his failure to do so amounted to the making of a false oath, necessitating the denial of a discharge.

In Bankruptcy.   In the matter of Frank F. Schroeder, bankrupt. On objections to discharge.   Discharge denied.

Herman S. Fried, of New York City, for trustee and opposing creditor.

Otto J. Kalt, of New York City, for bankrupt.

GARVIN, District Judge.   The trustee in bankruptcy and a creditor object to the discharge, and have filed specifications claiming that the bankrupt has—

I. Fraudulently transferred property.

II. Failed to schedule assets.

III. Made a false oath to the schedules.

IV. Concealed property with intent to hinder, delay, and defraud his creditors.

V. Failed to keep books of account.

VI. and VII. Willfully testified falsely with regard to material facts upon his examination before the referee in bankruptcy.

All parties have stipulated that the application for a discharge be heard and determined by the court upon the record, without a reference to a special commissioner, as is customary in this district.   The testimony of the bankrupt and his wife was given before the referee at the first meeting of creditors, and it is upon this testimony, taken in connection with the schedules verified by the bankrupt, that the trustee and objecting creditor rely in support of their specifications.   There was practically no argument; it now appears from the briefs that the only ground of objection pressed is the failure of the bankrupt to include in his schedules his equitable interest in property conveyed to his wife.

[1] The bankrupt conducted a tea and coffee business at 655 Manhattan avenue, Brooklyn, from September 8, 1917, under the name and style of "Java Tea & Coffee Company, Frank F. Schroeder,"

⊕⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

until May 5, 1918, when he gave a bill of sale thereof to his wife, as both he and she state, in anticipation of being drafted, and so that, according to her testimony, in the event he was drafted, she would have the business under her own control. He was never drafted. His wife continued business under the same name, but never filed a certificate in the office of the clerk of the county of Kings until after October 3, 1919, when the petition in bankruptcy was filed.

The entire record indicates clearly that there was no real transfer by the bankrupt to his wife of all his rights in the business. He did have the name on the store window changed to "Frank Schroeder, Manager"; but this, as he explains, was to prevent disputes. He testified:

"If anybody came in and asked for the proprietor, they would see my name on there as manager."

No inventory was made, and an alleged consideration, if given at all, was very much less than the interest of the bankrupt in the business. Except for the change on the window, there seems to have been literally nothing visible to indicate that it was claimed that a new owner had taken over the business. After the alleged transfer, there was no change in the books, and he continued his bank account, exactly as before, in his own name, paid therefrom for the goods used in the business and the overhead charges, gas, garage bills, electricity, and even for the rent of his home. In the brief submitted in behalf of the bankrupt it is explained that when the transfer was made there was a balance of about $70 in the bank, that the bank would not permit a new account unless there was a balance of at least $200, and that Mrs. Schroeder was notified to have her bank balance enlarged or close the account. In view of the fact that the deposits came from the same source, whether the account was carried in the name of the bankrupt or his wife, and in view of the fact that the bank did allow Schroeder to continue his account, it seems apparent that this explanation cannot be accepted as a reason for not transferring the account into the name of Mrs. Schroeder. He claims that his wife pays him for his work and he pays her board. She testified that she made no record of the "wages" she paid to him. In view of his false testimony, to which I shall refer, I reject such a claim and give it no credence.

The bankrupt testified before the referee that he kept no books of account. This was untrue, as he later admitted. The bankrupt's wife testified fully regarding his account book. He testified that he had had no bank account since he had been in business. Such testimony indicates he is unworthy of belief, for a great number of checks signed by him, before and after the so-called "transfer," were produced, which he then admitted were drawn by him.

[2] Without hesitation I reject the reason assigned by the bankrupt for the transfer. If that had been in fact the reason, when it was finally settled that he was not to be drafted, Mrs. Schroeder would naturally have reconveyed the business to him. She did not do so, and it is plain beyond question that the bankrupt was prompted to make the

so-called "transfer" because an action had been brought against him some months before, which he feared would result in a judgment, as a result of which his business would be seized and sold under execution. His apprehensions were well founded, for a judgment was later recovered in that suit, and it is clear to me that this transaction with his wife meant no real transfer to her of his business. If she had sought to hold it as against him, he could have recovered it from her. Therefore he should have set forth his rights therein in his schedules. He did not do so, and therefore he has failed to truthfully schedule his assets. The bankrupt must conceal nothing. I am of the opinion that this failure was the making of a false oath of such a character as to necessitate refusing the bankrupt his discharge. In re Dow (D. C.) 5 Am. Bankr. Rep. 400, 105 Fed. 889; In re Wood (D. C.) 3 Am. Bankr. Rep. 572, 98 Fed. 972. I have reached the same conclusion as did the court in Matter of Gammon (D C.) 6 Am. Bankr. Rep. 482, 109 Fed. 312.

The petition is therefore refused.